**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| AMERICAN PATENTS LLC, | |
|    Plaintiff, | Civil Action No. 4:19-cv-798 (ALM) |
|     v. | |
| HEWLETT PACKARD ENTERPRISE COMPANY, | |
|    Defendant. | |

**HEWLETT PACKARD ENTERPRISE COMPANY'S MOTION**
**TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**
**UNDER 28 U.S.C. § 1404(a) AND SUPPORTING BRIEF**

## TABLE OF CONTENTS

I.     **Introduction** ............................................................................................................... 1

II.    **Background Facts** ...................................................................................................... 2

    A.    Hewlett Packard Enterprise and Its Subsidiary Aruba Networks .......................... 2

    B.    The Accused Products and Suppliers of the Chipsets at Issue ............................... 3

    C.    The Plaintiff and the Asserted Patents .................................................................... 4

III.    **Summary of Argument** ............................................................................................. 5

IV.    **Legal Standards** ........................................................................................................ 6

V.    **Argument** ................................................................................................................... 7

    A.    This Action Could Have Been Brought in the Northern District of California ................................................................................................................. 7

    B.    The Private Interest Factors Favor Transfer to the Northern District of California ................................................................................................................. 7

        1.    The Relative Ease of Access to Sources of Proof ....................................... 7

        2.    The Availability of Compulsory Process to Secure the Attendance of Witnesses ............................................................................................... 10

        3.    The Cost of Attendance for Willing Witnesses ........................................ 11

        4.    All Other Practical Problems That Make Trial Easy, Expeditious, and Inexpensive ...................................................................................... 13

    C.    The Public Interest Factors Also Favor Transfer ................................................. 13

        1.    The Local Interest in Having Localized Interests Decided at Home ...... 133

        2.    The Remaining Public Interest Factors Are Neutral ............................... 155

VI.    **Conclusion** ............................................................................................................ 155

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Texas v. Samsung Elecs. Co.*,
  968 F. Supp. 2d 852 (E.D. Tex. 2013) ................................................................14

*American Patents LLC v. Juniper Networks, Inc.*,
  4:19-cv-00879, Dkt. 1 ............................................................................................4

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC.*,
  No. 4:13-cv-705 (ALM), 2015 WL 123852 (E.D. Tex. Jan. 7, 2015) ........................... *passim*

*Blue Spike, LLC v. Juniper Networks, Inc.*,
  No. 6:17-cv-16 (KNM), 2018 WL 4222994 (E.D. Tex. March 8, 2018) ................................5

*Creswell Holdings LLC v. Lenovo (United States) Inc.*,
  No. 4:15-CV-407 (ALM), 2016 WL 615652 (E.D. Tex. Feb. 16, 2016) ...............................15

*E-Sys. Design, Inc. v. Mentor Graphics Corp.*,
  No. 4:17-CV-00682 (ALM), 2018 WL 2463795 (E.D. Tex. June 1, 2018) ...........................15

*In re Genentech*,
  566 F.3d 1338 (Fed. Cir. 2009)................................................................6, 8, 10, 11

*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
  425 F. Supp. 2d 325 (E.D.N.Y. 2006) ...................................................................11

*Network Protection Sciences, LLC v. Juniper Networks, Inc.*,
  No. 2:10-cv-224 (JRG), 2012 WL 194382 (E.D. Tex. Jan. 23, 2012).....................................9

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009)................................................................................7

*Parity Networks, LLC v. Juniper Networks, Inc.*,
  No. 6:17-cv-495 (KNM), 2018 WL 9539505 (E.D. Tex. Aug. 10, 2018)...........................5, 9

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008)................................................................................6

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964).................................................................................................6

*Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*,
  No. 4:18-CV-474 (ALM), 2019 WL 3082314 (E.D. Tex. July 15, 2019)..............................15

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) .................................................................................6, 11, 12, 14

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) (en banc) ......................................................................... *passim*

*WiAV Networks, LLC v. 3Com Corp.*,
No. 5:09-CV-101 (DF), 2010 WL 11484491 (E.D. Tex. July 15, 2010) ....................... *passim*

**Statutes**

28 U.S.C. § 1400(b) ...................................................................................................................7

35 U.S.C. § 1404(a) .......................................................................................................... *passim*

## I.      Introduction

This is a lawsuit against a Silicon Valley company (Hewlett Packard Enterprise), alleging infringement against the products of its Silicon Valley subsidiary (Aruba Networks), and implicating chipsets of its Silicon Valley suppliers (Qualcomm and Broadcom).  It should be transferred to the Northern District of California, under 35 U.S.C. § 1404(a), for the convenience of parties and witnesses.

The wireless networking ("Wi-Fi") industry of Northern California's Silicon Valley is at the heart of this litigation.  Plaintiff American Patents LLC ("American Patents") has asserted the same patents against a series of other Wi-Fi companies, alleging infringement based on their products "that include 802.11ac and/or LTE capabilities."  That is, American Patents appears to be claiming that any product that practices the 802.11ac Wi-Fi standard infringes its patents.

In fact, most if not all of the American companies defending the parallel lawsuits have either their headquarters, a principal place of business, or an otherwise equally significant California presence.  Likewise, most if not all of the relevant Wi-Fi chipset suppliers (i.e., the companies that provide the chips containing the accused 802.11ac functionality) have a critical Silicon Valley presence.

Accordingly, the bulk of discovery in this case (and the parallel cases) will center in the Northern District of California, which also has a local interest in the disputed issues.  In contrast, the litigation has no meaningful connection to the Eastern District of Texas, except that American Patents—which appears to be a non-practicing entity—was incorporated there in April 2018, using the address of a law firm in Tyler, Texas, shortly before it began its litigation campaign.

Thus, the Court should exercise its discretion under 28 U.S.C. § 1404(a) to transfer this case to the Northern District of California, as it is clearly more convenient than the present forum.  As discussed further below, this case is notably similar to *WiAV Networks, LLC v. 3Com Corp.*,

No. 5:09-CV-101 (DF), 2010 WL 11484491 (E.D. Tex. July 15, 2010).  There, like here, a non-practicing entity sued a large number of Wi-Fi companies, alleging infringement of products practicing 802.11 Wi-Fi standards.  Observing that the majority of these Wi-Fi companies and many of their chipset suppliers were based in Northern California, and noting Northern California's local interest in the case, Judge Folsom concluded that the private and public interest factors favored transfer to the Northern District of California.  *See id.*, at *2–3, *5.  This case should be transferred for the same reasons.

## II.   Background Facts

### A.   Hewlett Packard Enterprise and Its Subsidiary Aruba Networks

Founded during the 1930s in a Palo Alto, California garage, Hewlett-Packard Company was the original Silicon Valley startup.[1]  In November 2015, Hewlett-Packard Company separated into two entities, HP Inc. and Defendant Hewlett Packard Enterprise Company ("HPE").  Lunetta Decl., Ex. 1, ¶ 2.  In February 2019, HPE relocated its headquarters from Palo Alto to nearby San Jose, California.  *Id.*  HPE currently employs over 4,000 individuals in its Northern California offices.  *Id.*

The infringement allegations in this lawsuit concern Wi-Fi access points developed and sold by Aruba Networks, Inc. ("Aruba").  Lunetta Decl., Ex. 1, ¶ 3.  Aruba is a Silicon Valley wireless networking company, which was founded in Sunnyvale, California in 2002, and acquired by Hewlett-Packard Company in March 2015.  *Id.*  It currently operates as a subsidiary of HPE, with its headquarters located in Santa Clara, California, just a few miles from the HPE headquarters.  *Id.*

---

[1] That garage is now a museum and an official California Historic Landmark known as the "Birthplace of Silicon Valley."  https://ohp.parks.ca.gov/?page_id=21522.

Aruba's research, development, sales, and marketing activities are led from its Santa Clara headquarters.  *Id.*, ¶ 6.  Although the company operates a number of other offices in U.S. and foreign locations, it has no office in Plano, Texas.  *Id.*, ¶ 7.  Plaintiff's complaint alleges that HPE has a regular and established place of business at 6080 Tennyson Pkwy in Plano, Texas.  Dkt. No. 1, ¶ 5.  While there are HPE Inside Sales team members in Plano, they are dedicated to support products in HPE's Compute, Storage, and Services lines of business—businesses distinct from the wireless products at issue in this case.  Lunetta Decl., Ex. 1, ¶ 7.  The Inside Sales team for Aruba is located in Portland, Oregon.  *Id.*

### B.  The Accused Products and Suppliers of the Chipsets at Issue

American Patents alleges infringement based on Wi-Fi access points that support the IEEE 802.11ac standard.  *See* Dkt. No. 1, ¶¶ 11, 25, 37 (accusing "products that include 802.11ac and/or LTE capabilities").  Specifically, the Complaint identifies the Aruba 303 Series Campus Access Points and the HPE OfficeConnect OC20 802.11ac Series Access Points as accused products, and alleges that these products infringe based on their use of Multi-Input Multi-Output ("MIMO") and Orthogonal Frequency Division Multiplexing ("OFDM") technologies consistent with the 802.11ac specification.  *See id.*, ¶¶ 11–19, 25–31, 37–46.

These access points were developed and sold by Aruba.[2]  Lunetta Decl., Ex. 1, ¶¶ 3–4.  The accused MIMO and OFDM technologies in the Aruba products reside in third-party Wi-Fi chipsets, which are supplied by two outside vendors—Qualcomm and Broadcom.  *Id.*, ¶ 5.  Similarly, both Qualcomm and Broadcom appear to be based in San Jose, California.[3]  Exs. 2–3.

---

[2] The OfficeConnect OC20 has reached end of life.  In June, 2019, Aruba announced that that product would have an end-of-sales date of December 30, 2019.  Ex. 10.

[3] Qualcomm's wireless networking chipset business has been known as Qualcomm Atheros, as it resulted from Qualcomm's acquisition of Atheros Communications, a networking company based in San Jose, CA.  https://www.qualcomm.com/news/releases/2011/01/05/qualcomm-acquire-atheros-leader-connectivity-networking-

### C.     The Plaintiff and the Asserted Patents

Plaintiff American Patents appears to be a non-practicing entity whose sole business is patent litigation.  Its website, https://www.ampatents.com/, provides no description of the entity aside from contact information and an American flag.  It was formed as a Texas LLC in April 2018, shortly before it began its litigation campaign. Ex. 9.  Its registered agent is Jon Rowan, and its "principal place of business" is listed as being at the same address as Rowan Law Firm PC, in Tyler, Texas.[4]

American Patents acquired the asserted patents (U.S. Patent Nos. 7,088,782, 7,310,304, and 7,706,458) from Intellectual Ventures, a patent monetization entity based in Bellevue, Washington.  Ex. 4–6.  The patents name Georgia Tech professors as inventors, and appear to have been prosecuted by Georgia-based lawyers.  *See* Ex. 7.[5]

American Patents has recently asserted the same patents against a number of other technology companies, alleging infringement based on products "that include 802.11ac and/or LTE capabilities," and naming Wi-Fi access points and routers as accused products.  *E.g.*, *American Patents LLC v. Juniper Networks, Inc.*, 4:19-cv-00879 (ALM), Dkt. No. 1 ¶¶ 11, 25, 37 (E.D. Tex. Nov. 26, 2019).  All of the American companies defending the parallel lawsuits (aside from U.S. subsidiaries of foreign defendants) have either their headquarters, a principal place of

---

solutions.  Qualcomm Atheros subsequently operated as a subsidiary of Qualcomm, with its headquarters remaining in San Jose, CA.    https://www.qualcomm.com/news/releases/2011/05/24/qualcomm-completes-31-billion-acquisition-atheros-communications.    Qualcomm's corporate headquarters is in San Diego, CA. https://www.qualcomm.com/contact.  Broadcom is based in San Jose, CA. Ex. 2.

[4] *Compare* http://www.rowanfirm.com/ *with* https://www.ampatents.com/.

[5] One of the prosecuting lawyers appears to have since moved to New Hampshire. http://www.mcr-ip.com/about-our-firm/daniel-j-long/.  Similarly, one of the named inventors appears to now be based in Massachusetts. https://www.linkedin.com/in/dr-apurva-n-mody-730a21/.

business, or an otherwise equally significant California presence.[6]  Likewise, most if not all of the relevant Wi-Fi chipset suppliers (i.e., the companies that provide the chips containing the 802.11ac functionality) have a critical Silicon Valley presence.[7]

## III.    Summary of Argument

The center of gravity for this case is Silicon Valley.  Defendant HPE is headquartered there, as is its subsidiary relevant to the accused products (Aruba) and its chipset suppliers responsible for the accused 802.11ac wireless functionality (Qualcomm and Broadcom).  Lunetta Decl., Ex. 1, ¶ 2; Exs. 2–3.  Indeed, "Silicon Valley" got its name from the silicon-based integrated circuit chips at the heart of this case.  Northern California, therefore, is the locus of physical evidence, willing witnesses, third-party witnesses, and local interest for this case.  The case has no meaningful connection to the Eastern District of Texas, except that Plaintiff American Patents—which appears to be a non-practicing entity—was incorporated there in April 2018.  Ex. 9.

Because the private and public interest factors demonstrate that the Northern District of California is clearly a more convenient venue, this case should be transferred there.

---

[6] These include Fortinet, Inc. (Sunnyvale, CA) (4:19-cv-00878), https://www.fortinet.com/corporate/about-us/global-offices.html; Juniper Networks (Sunnyvale, CA) (4:19-cv-00879), https://www.juniper.net/us/en/contact-us/; and Sophos, Ltd. (Santa Clara, CA) (4:19-cv-00881), https://www.sophos.com/en-us/company/contact.aspx.

Notably, at least one of the other American defendants, Juniper Networks, has previously had patent infringement cases relating to networking technologies transferred from this District to the Northern District of California.  *See Parity Networks, LLC v. Juniper Networks, Inc.*, No. 6:17-cv-495 (KNM), 2018 WL 9539505 at *1 (E.D. Tex. Aug. 10, 2018) (granting motion to transfer venue under 28 U.S.C. § 1404(a)); *Blue Spike, LLC v. Juniper Networks, Inc.*, No. 6:17-cv-16 (KNM), 2018 WL 4222994 at *1 (E.D. Tex. March 8, 2018) (granting motion to transfer venue under 28 U.S.C. § 1404(a)).

[7] For Qualcomm and Broadcom, see *supra* note 3 regarding their presences in San Jose, CA.  Likewise, chipset supplier Annapurna has a U.S. headquarters in Cupertino, CA, http://www.annapurnalabs.com/contact.html; Marvell has a U.S. headquarters in Santa Clara, CA, https://www.marvell.com/company/; MediaTek has a U.S. location in San Jose, CA, https://www.mediatek.com/about/office-locations/mediatek-usa-offices; and Quantenna is headquartered in San Jose, CA, http://www.quantenna.com/contact/.

## IV.    Legal Standards

28 U.S.C. § 1404(a) gives courts the discretion to transfer a civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "Under Fifth Circuit law, a motion to transfer venue should be granted upon a showing that the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff."  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).  "The purpose of 28 U.S.C. § 1404(a) is to prevent the waste of time, energy and money and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC.*, No. 4:13-cv-705 (ALM), 2015 WL 123852, at *1 (E.D. Tex. Jan. 7, 2015) [hereinafter "*Auto Body Parts*"] (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotation marks omitted)).

Courts first determine (A) "'whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed,' or whether all parties have consented to a particular jurisdiction," and then weigh the Fifth Circuit's (B) public interest factors and (C) private interest factors.  *Id.* (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter "*Volkswagen I*"]).  Where those factors show that another venue is "clearly more convenient," cases in this district may be transferred.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) [hereinafter *Volkswagen II*]; *TS Tech*, 551 F.3d at 1319.  Convenience and costs to parties and third parties, availability of compulsory process, and ease of access to proof are important private interest factors.  *See In re Genentech*, 566 F.3d 1338, 1342–45 (Fed. Cir. 2009).  And, when a substantial number of party and third-party witnesses live in the transferee forum, while few live in the plaintiff's chosen forum, transfer should be ordered.  *See id.*; *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("This court has held and holds again in this instance that in a case featuring most witnesses and evidence closer to the transferee venue

with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer.").

## V.     Argument

### A.     This Action Could Have Been Brought in the Northern District of California

As a threshold matter, Plaintiff could have brought this action in the Northern District of California because personal jurisdiction and venue are both proper there.  *See* § 1404(a); *Volkswagen II*, 545 F.3d at 313–14.  HPE is subject to personal jurisdiction in the Northern District of California because that district is home to its headquarters and principal place of business (in San Jose, California).  Lunetta Decl., Ex. 1, ¶ 2.  That headquarters is also a regular and established place of business for purposes of establishing proper venue.  *See* 28 U.S.C. § 1400(b); Lunetta Decl., Ex. 1, ¶ 2.  Thus, this suit could have been brought in the Northern District of California.

### B.     The Private Interest Factors Favor Transfer to the Northern District of California

The private interest factors strongly favor transfer to Northern California.  These factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315.

#### 1.     The Relative Ease of Access to Sources of Proof

Discovery relating to the alleged infringement will be centered in California.  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *Genentech, Inc.*, 566 F.3d at 1345.  "The Fifth Circuit has cautioned this factor

remains relevant despite technological advances having made electronic document production commonplace." *Auto Body Parts*, 2015 WL 123852, at *4 (citing *Volkswagen II*, 545 F.3d at 316).

Here, sources of proof in Northern California include HPE, its relevant subsidiary, Aruba, and its third-party chipset suppliers, Qualcomm and Broadcom.  *See* Lunetta Decl., Ex. 1, ¶¶ 2–3; Ex. 2–3.  Employees at Aruba's headquarters in Santa Clara, California make and have made decisions regarding both the product development and product management of the accused products and the procurement of the relevant wireless chipsets, as well as concerning finances, sales, and marketing of the accused products.  Lunetta Decl., Ex. 1, ¶ 6.  The Northern California–based HPE/Aruba witnesses and their relevant knowledge include:

- Eric Johnson (Director, Product Management): knowledge or information relevant to the product management, development, design, testing, and/or operation of one or more of the accused products;

- Onno Harms (Director, Product Management): knowledge or information relevant to the product management, development, design, testing, finances, and/or operation of one or more of the accused products;

- Rajini Balay (Director of Engineering):  knowledge or information relevant to the product management, development, design, testing, and/or operation of one or more of the accused products;

- Ben Dunsbergen (Senior Director, Access Points Engineering): knowledge or information relevant to the product management, development, design, testing, and/or operation of one or more of the accused products;

- Larry Lunetta (VP WLAN and Security Solutions Marketing): knowledge or information relevant to the marketing of one or more of the accused products; and

- John Charles (Strategic Supply Manager): knowledge or information relevant to procurement of chipsets used in one or more of the accused products.

Lunetta Decl., Ex. 1, ¶ 6.

In stark contrast, there are no known relevant documents or employees related to the Accused Products located in Texas.  *See* Section II.A*, supra*.  Thus, this factor favors transfer.  *See,*

*e.g., Parity Networks, LLC v. Juniper Networks, Inc.*, No. 6:17-cv-495 (KNM), 2018 WL 9539505 at *2 (E.D. Tex. Aug. 10, 2018) (finding that this factor weighed in favor of transfer where the defendant's relevant sources of proof were located in its California headquarters).   Moreover, Plaintiff's only connection to this District appears to have been manufactured for purposes of litigation, as it was only formed as a Texas LLC in April 2018, shortly before it began its litigation campaign.   Plaintiff's listed "principal place of business" is actually the address of a law firm, as discussed above in Section II.C.   Yet "recent and ephemeral contacts with a forum, which are nothing more than a construct for litigation, should not be considered in a § 1404(a) analysis."   *See Network Protection Sciences, LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224 (JRG), 2012 WL 194382, at *4 (E.D. Tex. Jan. 23, 2012).

This Court faced a similar circumstance in *Auto Body Parts*.  *See* 2015 WL 123852.  There, "the bulk of the relevant evidence regarding the creation of the design" of the accused automotive products was in Michigan, while there were "absolutely no documents or other physical evidence located in the Eastern District of Texas."  *Id.* at *5.  The same is true here: discovery concerning the research, development, design, marketing, and sale of the accused products will come from Northern California—from HPE, Aruba, Qualcomm, and Broadcom.  *See* Lunetta Decl., Ex. 1, ¶¶ 2–3; Ex. 2–3.  HPE's Plano, Texas office will not be the focus of any discovery.  As noted above, the Plano-based sales staff is directed to products in HPE's lines of business that are not at issue in this litigation  *See* Lunetta Decl., Ex. 1, ¶ 7.  The accused products were not developed in Texas and are not managed in Texas, and neither the named inventors of the asserted patents, nor their prosecuting attorneys, are based in Texas, as discussed above in Section II.  Thus, as in *Auto Body Parts*, because there is no evidentiary connection to this District, this factor strongly favors transfer.  *See* 2015 WL 123852 at *5.

### 2.     The Availability of Compulsory Process to Secure the Attendance of Witnesses

This factor "will generally favor transfer when more non-party witnesses reside within the proposed venue than in the current venue." *WiAV*, 2010 WL 11484491, at *3 (citing *Volkswagen II*, 545 F.3d at 316).  "A court cannot compel nonparty witnesses to travel more than 100 miles, unless it is within the same state and will not cause the witnesses to incur substantial travel expenses." *Auto Body Parts*, 2015 WL 123852, at *5 (citing Fed. R. Civ. P. 45(c)(3)(A)(ii), 45(c)(3)(B)(iii)).

The infringement theory asserted by American Patents focuses squarely on HPE's two third-party chipset suppliers—Qualcomm and Broadcom.  Lunetta Decl., Ex. 1, ¶ 5.  Indeed, the MIMO and OFDM technologies that American Patents accuses of infringement all originate from and reside within component wireless chipsets that HPE procures from Qualcomm and Broadcom. *Id.*  Thus, the infringement issues in this case will turn heavily on evidence from those two third parties.  San Jose, California, where both chipset suppliers appear to be based in relevant respects, is approximately 1,440 miles from the Eastern District of Texas.  Ex. 8.  Accordingly, relevant third-party witnesses from these chipset suppliers are within the subpoena power of the Northern District of California, but not that of the Eastern District of Texas.  These witnesses are likely to be highly relevant to assessing infringement. *See* Lunetta Decl., Ex. 1, ¶ 5; *Genentech, Inc.*, 566 F.3d at 1343 (Fed. Cir. 2009) ("A district court should assess the relevance and materiality of the information the witness may provide.").  HPE is not aware of any relevant third-party witnesses residing in the Eastern District of Texas.

*WiAV* is instructive on this factor, because there as here, "the Northern District of California enjoy[ed] absolute subpoena power over several chipset suppliers" and therefore "greater ability to compel witnesses for both depositions and trial."  2010 WL 11484491, at *3

(citing *Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer[.]") (citations omitted)).  Likewise, here this factor weighs strongly in favor of transfer.

### 3.    The Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in transfer analysis." *Genentech*, 566 F.3d at 1343 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)).  This Court applies the Fifth Circuit's "100-mile" rule to "determine the convenience of the transferee district to the witnesses and parties." *E.g.*, *Auto Body Parts*, 2015 WL 123852, at *6 (citing *Volkswagen I*, 371 F.3d at 204–05 ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of the convenience to witnesses increases in direct relationship to the additional distance to be traveled.")).  The "100-mile" rule is satisfied here, as the Northern District of California is approximately 1,440 miles from Sherman, Texas.  Ex. 8.  Because the accused Wi-Fi access point products were developed by Santa Clara–based Aruba Networks, Lunetta Decl., Ex. 1, ¶ 4, the key witnesses relevant to the research, design, development, marketing, and sale of these products are based in Northern California, as discussed above in Section V.B.1.  Attending trial in the Northern District of California would be significantly less costly for these Silicon Valley–based party witnesses than travel to the Eastern District of Texas.  Indeed, it is "an obvious conclusion that it would be more convenient for witnesses to testify" where they are located. *Volkswagen I*, 545 F.3d at 205.

In contrast, HPE is not aware of any relevant witnesses located in the Eastern District of Texas, and neither the named inventors nor the prosecuting attorneys appear to be located in Texas. Furthermore, as discussed above, third-party witnesses from the relevant chipset suppliers will likely be highly relevant to the infringement allegations in this case.  The Northern District of

California, where those chipset suppliers are based in relevant respects, appears to be more convenient for those likely third-party witnesses.  *See* Exs. 2-3; *Volkswagen I*, 545 F.3d at 205.

In *WiAV*, the court concluded that this factor weighed in favor of transfer, because "a significant number of potential witnesses [were] clustered in or near the transferee venue while not a single witness reside[d] in the Eastern District of Texas."  *Id.* at *5.  As in this case, many of the defendants in *WiAV* were based in California, with several headquartered in the Northern District.  *See* 2010 WL 11484491, at *3.  And, although some of the *WiAV* defendants had corporate offices and other facilities in Texas, they explained that these facilities had "nothing to do with" the case.  *Id.* at *4.  The same holds true here.  Although HPE operates an office in Plano, Texas, that office is directed to other HPE lines of business. *See* Lunetta Decl., Ex. 1, ¶ 7.  Indeed, this factor is perhaps even stronger here, as this motion is only requesting transfer of the present action, in which the sole defendant (HPE) and its relevant subsidiary (Aruba) are headquartered in the Northern District of California.  In contrast the *WiAV* case was a pre-AIA lawsuit involving more than twenty unrelated defendants, not all of which were based in California.

Requiring travel to Eastern District of Texas would also impact HPE's business in Northern California, just as the willing witnesses in *Auto Body Parts* "would incur substantial expense from traveling and would disrupt Ford's ordinary business."  2015 WL 123852, at *6; *see also Volkswagen II*, 545 F.3d at 317 ("[A]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time in which these fact witnesses must be away from their regular employment.").  And, just as this Court found in *Auto Body Parts*, the present plaintiff does "not share this concern" because it does not "make, manufacture, or sell any products."  2015 WL 123852, at *6.  This factor strongly favors transfer.

4. **All Other Practical Problems That Make Trial Easy, Expeditious, and Inexpensive**

The final private interest considerations are the practical factors relating to ease, expense, and expediency of trial. This case is in its early stages, discovery has yet to begin, and HPE has timely moved to transfer. As such, no practical considerations weigh against transfer. On the other hand, proceeding in Texas would needlessly and substantially increase the costs and burdens of this litigation for HPE, Aruba, and non-party chipset suppliers Qualcomm and Broadcom.

C. **The Public Interest Factors Also Favor Transfer**

The public interest factors also favor transfer to the Northern District of California. These include (1) the local interest in having localized interests decided at home; (2) the administrative difficulties flowing from court congestion; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law. *See Volkswagen II*, 545 F.3d at 315.

1. **The Local Interest in Having Localized Interests Decided at Home**

"Under this factor, transfer may be appropriate where," as here, "there is 'no relevant factual connection' to the present venue." *WiAV*, 2010 WL 11484491, at *5 (quoting *Volkswagen II*, 545 F.3d at 318). This is so because "a district court is to consider 'those actually affected— directly and indirectly—by the controversies and events giving rise to a case,'" *Id.* (quoting *Volkswagen II*, 545 F.3d at 318), and "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Affinity Labs of Texas v. Samsung Elecs. Co.*, 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013) (citing *Volkswagen I*, 371 F.3d at 206).

For example in *Auto Body Parts* this Court found the local interests to support transfer because "the research, design, advertising decisions, and marketing decisions" at issue all occurred

in the transferee venue—there, the Eastern District of Michigan—while the "Eastern District of Texas lack[ed] any meaningful connection to [the] litigation."  2015 WL 123852, at *4.  Likewise, *WiAV* implicated "northern California-based companies" and "wireless chipset suppliers [] largely based in Silicon Valley," not the Eastern District of Texas.  2010 WL 11484491, at *5.

The Northern District of California has a significant local interest in this litigation.  Just as the automotive industry (at issue in *Auto Body Parts*) is central to the Eastern District of Michigan—with Detroit known as "Motor City"—the silicon integrated circuits industry is central to, and gave rise to the name for, Northern California's Silicon Valley.

First, HPE—like many other players in the Wi-Fi industry (including several sued in parallel)—is headquartered in Northern California.  Lunetta Decl., Ex. 1, ¶ 2.  Second, the HPE subsidiary relevant to the development, marketing, and sales of the accused Wi-Fi access point products, Aruba Networks, is based in Northern California.  *Id.*, ¶ 3.  Third, HPE employs over 4,000 employees in its Northern California offices, including the employees listed above who are specifically relevant to this case.  *Id.*, ¶ 2; *see E-Sys. Design, Inc. v. Mentor Graphics Corp.*, No. 4:17-CV-00682 (ALM), 2018 WL 2463795, at *6 (E.D. Tex. June 1, 2018) ("[T]he public interest is greater in the [transferee venue] where [Defendant] is headquartered and where nearly 1,000 of its employees reside."); *Creswell Holdings LLC v. Lenovo (United States) Inc.*, No. 4:15-CV-407 (ALM), 2016 WL 615652, at *3 (E.D. Tex. Feb. 16, 2016) ("[T]he Eastern District of Texas has a less significant connection to this litigation as the [transferee venue] is home to at least a few likely relevant witnesses, Defendant's headquarters, and over two-thousand employees.").

Fourth, the companies that develop and supply the chipsets providing the accused Wi-Fi functionalities, Qualcomm and Broadcom (along with most if not all other wireless chipset

suppliers) are located in or have a significant presence in Northern California.[8]  Like in *Auto Body Parts* and *WiAV*, "a jury member from the Northern District of California would likely see the issues of this case having local import" because the "Northern District of California has a stronger 'factual connection' to the events giving rise to this case."  *WiAV*, 2010 WL 11484491, at *5–6. The same is not true of Texas.  *Cf. Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 4:18-CV-474 (ALM), 2019 WL 3082314, at *33 (E.D. Tex. July 15, 2019) ("While the patent is owned by a Texas resident, the patent was not invented here and Dr. Anne Wong along with Plaintiff are recent Texas residents.  As such, while the Court does consider the fact that Plaintiff is located in Plano, Texas, it does not find this fact to create a significant connection based on the facts of this case.").  If there is any industry whose litigation should be heard in the Northern District of California based on local import, it is this industry.  This factor weighs heavily in favor of transfer.

### 2.    The Remaining Public Interest Factors Are Neutral

The remaining public interest factors relating to court congestion, governing law, and conflicts of laws are neutral.  Both this Court and the Northern District of California have active patent dockets, and both are familiar with the governing patent law, which is to be uniformly applied.

## VI.    Conclusion

For all of the foregoing reasons, Defendant HPE respectfully requests the Court to transfer this case to the Northern District of California.

---

[8] *See supra* note 5.

Respectfully submitted,

*/s/ Jennifer H. Doan*
Jennifer H. Doan
Texas Bar No. 08809050
jdoan@haltomdoan.com
Jeffrey R. Roeser
Texas Bar No. 24089377
rroeser@haltomdoan.com
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Phone: (903) 255-1000
Fax: (903) 255-0800

David A. Garr (*pro hac vice* forthcoming)
dgarr@cov.com
Derek J. Andros (*pro hac vice* forthcoming)
dandros@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Phone: (202) 662-6000
Fax: (202) 662-6291

Anupam Sharma (*pro hac vice* forthcoming)
asharma@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Phone: (650) 632-4700
Fax: (650) 632-4800

*Counsel for Defendant Hewlett Packard*
*Enterprise Company*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this 21st day of January 2020.

*/s/ Jennifer H. Doan*
Jennifer H. Doan


## CERTIFICATE OF CONFERENCE

The undersigned certifies that on January 21, 2020, J. Randy Roeser, counsel for HPE met and conferred with Zachariah Harrington for American Patents.  American Patents is opposed to the relief requested in this motion.

*/s/ Jennifer H. Doan*
Jennifer H. Doan