**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| AMERICAN PATENTS LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY,<br><br>    Defendant. | CIVIL ACTION NO. 4:19-cv-798-ALM<br><br>**<u>JURY TRIAL DEMANDED</u>** |

**AMERICAN PATENTS' OPPOSITION TO HEWLETT PACKARD ENTERPRISE COMPANY'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND ....................................................................................................................2

    A. Procedural Background ..................................................................................................2

    B. Factual Background .......................................................................................................2

        1. HPE Is a Global Company With an Extensive Texas Presence.........................2

        2. Witnesses With Product Knowledge Are Located Outside of California...........5

        3. American Patents Is A Local Company With Local Owners .............................6

III. THE COURT SHOULD DENY HPE'S MOTION TO TRANSFER....................................7

    A. The Private Interest Factors Weigh Against Transfer....................................................7

        1. Judicial Economy Strongly Disfavors Transfer..................................................7

        2. The Relative Ease of Access to Sources of Proof Weighs Against Transfer......9

        3. The Cost of Attendance for Willing Witnesses Is Neutral ...............................11

        4. The Availability of Compulsory Process Is Neutral ........................................12

    B. The Public Interest Factors Weigh Against Transfer...................................................13

        1. Time to Trial Weighs Against Transfer............................................................13

        2. Local Interest Weighs Against Transfer ..........................................................14

        3. The Remaining Public Interest Factors Are Neutral ........................................15

IV. CONCLUSION ...................................................................................................................15

I. **INTRODUCTION**

HPE has not made a showing sufficient to warrant transfer. Reflecting the deference given to a plaintiff's choice of venue, Fifth Circuit precedent "places a ***significant burden***" on the movant to show that the transferee district is "***clearly more convenient***." But HPE's evidence boils down to little more than the locations of its headquarters and a few cherry-picked employees. And when it came time to find someone to testify about whether it was clearly more convenient to transfer this case to Northern California, HPE was forced to put up a witness in Montreal, Quebec.

Further, while HPE leans heavily on the 1930's Palo Alto origins of its predecessor company, today's HPE is a massive corporation with offices and employees worldwide. In fact, HPE has at least as many employees in Texas as it does in Northern California; employees with relevant knowledge are in diverse locations closer to this District than to Northern California; HPE's documents and information are equally accessible in this District; and both HPE and American Patents have significant ties to Texas and to this District in particular.

Even putting that aside, considerations of judicial economy make this Court a far better forum than Northern California. This Court has previously presided over ten cases involving patents asserted here. In doing so, the Court resolved significant procedural and discovery disputes, and even engaged a technical expert to help understand the patented technology. The Court's experience will help streamline the issues. Further, nine co-pending cases in this District involve the same four patents-in-suit. Each suit involves a different defendant, but none of the other defendants have moved to transfer. Transfer of this case would thus lead to the inefficiency of having two courts preside over the same issues, creating the potential for inconsistent rulings and outcomes. Judicial economy strongly favors keeping this case here.

Considering the full scope of evidence and considerations of judicial economy, HPE has

not come close to showing that trying this case in the Northern District of California would be clearly more convenient. Instead, the evidence affirmatively shows that it is clearly more convenient for this case to proceed in *this* District.

## II. BACKGROUND

### A. Procedural Background

American Patents asserts four patents in this case, U.S. Patent Nos. 6,847,803 ("the '803 patent"); 7,088,782 ("the '782 patent"), 7,310,304 ("the '304 patent"), and 7,706,458 ("the '458 patent"). Aside from this suit, there are nine other suits involving the same patents-in-suit pending in this District.[1] No defendants in the co-pending suits have moved to transfer.

Besides the co-pending suits, American Patents has previously asserted three of the patents-in-suits against ten defendants in this District, which cases have since terminated.[2] In at least some of these cases, the Court ruled on significant procedural and discovery motions, appointed a technical advisor, and the proceedings progressed up to the claim construction stage before settling. *See, e.g.*, Case No. 4:18-cv-698, Dkts. 45, 51, 55.

### B. Factual Background

#### 1. *HPE Is a Global Company With an Extensive Texas Presence.*

HPE is a global company with offices and employees in over fifty countries worldwide. Ex. A [HPE Office Locations] (listing at least fifty-four countries). It claims to serve "175 countries across the North America, Latin America, Asia-Pacific, Europe, Middle East & Africa markets." Ex. B [HPE Fact Sheet] at 2. HPE's products are available for purchase across the

---

[1] *See American Patents LLC v. TCL Corp.*, No. 4:18-cv-767; *v. Tsinghua Tongfang Co., Ltd.*, No. 4:19-cv-763; *v. D-Link Corp.*, No. 4:19-cv-764; *v. TP-Link Techs. Co., Ltd.*, No. 4:19-cv-765; *v. Hon Hai Precision Indus. Co. Ltd.*, No. 4:19-cv-799; *v. ZyXEL Communications Corp.*, No. 4:19-cv-800; *v. Coolpad Group Limited*, No. 4:19-cv-877; *v. Juniper Networks, Inc.*, No. 4:19-cv-879; *v. Shenzhen Tenda Tech. Co., Ltd.*, No. 4:19-cv-880.

[2] *See American Patents LLC v. Huawei Device USA Inc.*, No. 4:18-cv-672; *v. ZTE Corp.*, No. 4:18-cv-675; *v. Acer Inc.*, No. 4:18-cv-697; *v. AsusTek Computer Inc.*, No. 4:18-cv-698; *v. HP Inc.*, No. 4:18-cv-700; *v. OnePlus Tech. (Shenzen) Co., Ltd.*, No. 4:18-cv-701; *v. Panasonic Corp. of N. Am.*, No. 4:18-cv-766; *v. Hisense Co. Ltd.*, No. 4:18-cv-768; *v. Fortinet, Inc.*, No. 4:19-cv-878; *v. Sophos Ltd.*, No. 4:19-cv-881.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

U.S. *See, e.g.*, Dkt. 1 at ¶¶ 11-13. As of October 2019, HPE employed approximately 61,600 people.[3] Ex. C [2019 Form 10-K] at 9.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ HPE is deeply integrated with the Texas communities in which it resides. In 2018, HPE preleased 568,000 square feet of a new facility it is building in Houston, following flood damage to its existing campus. Ex. E [Article dated Nov. 1, 2017]; Ex. F [Article dated Oct. 31, 2018]. This "represent[ed] the largest office deal that ha[d] been executed in Houston" in 2018. *Id.* As stated by HPE's CEO, Antonio Neri, "[t]he city of Houston remains a top location for Hewlett Packard Enterprise." Ex. F [Article dated Oct. 31, 2018]; *see also* Ex. E [Article dated Nov. 1, 2017] (quoting Neri: "'We have a long history in Houston and we remain deeply committed to the area and our over 3,000 local employees. We look forward to many more years as part of the community in a new Houston area campus, purpose-built for our company.'").

In this District, HPE occupies over 106,000 square feet of office space at its Plano location, and is involved in the local community. Ex. G [Article dated Jun. 25, 2018]; Ex. H [HPE Volunteer Outreach] (describing Volunteer Expo at HPE's Plano campus, in partnership with local library); *see also* Ex. I [Glassdoor – HPE Plano] (photograph of Plano campus).

HPE also employs a significant workforce in Texas overall. Indeed, the available evidence suggests that HPE may employ 10,000+ people in Texas—including some 4,000 in the Dallas-Fort Worth area. Ex. J [LinkedIn Results – Houston] (showing 6,398 employees in Greater Houston area); Ex. K [LinkedIn Results – DFW] (showing 4,367 employees in Dallas-Forth Worth Metroplex). HPE responded in written discovery that it has ▇▇▇ employees in its Texas offices—▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. ▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[3] The 4,000 people HPE claims to employ in its Northern California offices, *see* Mot. at 2, make up just 6.5% of HPE's total employees.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.* at 20:4-11.[4]

In addition, there are several HPE employees specifically affiliated with Aruba Networks based in Texas. Ex. M [LinkedIn Results – Aruba Houston] (showing 31 employees in Greater Houston area); Ex. N [LinkedIn Results – Aruba DFW] (showing 39 employees in Dallas-Fort Worth Metroplex).[5] The discovery HPE provided confirms that there are at least ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

Further, HPE's Texas employees are not limited to non-technical sales personnel, as HPE's brief implies. *See, e.g.*, Mot. at 3. Rather, there are several technical posts in Texas and this District, including positions specifically relating to the 802.11 standard and accused technology, and further including positions specifically designated as with Aruba. For instance, when shown a LinkedIn profile for Aruba advanced principal network engineer Charlie Clemmer, located in the Dallas-Fort Worth area, HPE's witness explained that this role requires knowledge of wireless access point technology, including 802.11 technology. ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See also* Exs. P [LinkedIn – Seth Atkins] (sales engineer at Aruba, Dallas-Fort Worth); Q [LinkedIn – Manisha Arumugam] (cloud network test engineer at Aruba); R [LinkedIn – Andrew Hejnar] (director of Americas advanced customer engineering group at Aruba); *see also, e.g.*, Exs. S [Aruba Resident Engineer, Teleworker, Texas] (telework position requiring "practical hands on WLAN and 802.11 experience and

---

[4] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. But it seems just as likely that existing employees have not updated their profiles to list HPE, such that the number would be artificially low.

[5] HPE's written discovery responses assert a lower number, but as explained above, this number does not account for remote workers, contractors, and temporary workers. *See supra.*

4

▬

expertise"), T [Americas Regional Manufacturing Product Engineer, El Paso], U [Software Design Engineer (5G), Plano], V [Software Design Engineer (Mobile 5G), Plano], W [Software Design Engineer (Mobile Core), Plano], X [Vice President, Knowledge Management, Plano], Y [Systems Engineer, Aruba, Dallas], Z [Territory Account Manager, Aruba, Dallas].

And regardless of office location, any of HPE's documents can be accessed from any location in the world—including from within this District:



Ex. L [LaRoche Depo.] at 18:3-19 (form objection omitted). ▬

▬. *Id.* at 18:20-19:15.

2. ***Witnesses With Product Knowledge Are Located Outside of California.***

HPE provided a list of six individuals alleged to have relevant knowledge. *See* Mot. at 8.



5



3. ***American Patents Is A Local Company With Local Owners.***

American Patents is a Texas LLC based in Tyler, Texas. It was formed by Jon Rowan, an attorney who manages the company from his office in Tyler. *See* Ex. AA [Rowan Decl.] at ¶¶ 2-3, 9. Mr. Rowan was born and raised in Tyler, and he lives and works there now. *Id.* ¶¶ 5-6. Mr. Rowan practices as a transactional attorney, pays taxes, votes, and attends church in this District, and he is actively involved in the community of this District. *Id.* ¶ 7.

Sam Greenberg is the only other investor in American Patents. *Id.* ¶ 8. Like Mr. Rowan, Mr. Greenberg is a life-long resident of this District. *Id.* Mr. Greenberg was born and raised in this District, has lived in this District for many years, and runs his family's 70-year old business, Greenberg Smoked Turkeys, in this District. *Id.*

### III. THE COURT SHOULD DENY HPE'S MOTION TO TRANSFER

### A. The Private Interest Factors Weigh Against Transfer.

#### 1. *Judicial Economy Strongly Disfavors Transfer.*

Considerations of judicial economy strongly disfavor transfer for two related reasons: (1) there are currently nine cases involving the same patents-in-suit pending in this District, and no other defendant has moved to transfer; and (2) this Court has familiarity with the patents and accused technology through handling ten prior litigations involving the patents-in-suit.

Courts recognize the efficiencies to be gained when "the same judge handle[s] both [the suits against transfer movants] and [] suits against other parties involving the same patents and technology as to which there was no issue of transfer." *In re EMC Corp.*, 501 Fed. Appx. 973, 976 (Fed. Cir. 2013). This factor is so important that the Court may deny transfer based on judicial economy considerations "even if the convenience of the parties and witnesses might call for a different result." *IPVX Patent Holdings, Inc. v. AltiGen Commc'ns, Inc.*, No. 6:11-cv-568, 2014 WL 12597042, at *4 (E.D. Tex. Feb. 11, 2014); *see also In re Google Inc.*, 412 Fed. Appx. 295, 296 (Fed. Cir. 2011); *Soverain Software LLC v. Oracle Corp.*, No. 6:12-cv-141, Dkt. 160 (E.D. Tex. Mar. 27, 2014) (finding that judicial economy alone justified denying transfer, given prior and co-pending litigations involving the asserted patents).[6]

This Court frequently denies transfer when there are multiple co-pending cases with no venue issues, such that the remaining cases "will remain here" regardless. *See Parthenon Unified Memory Architecture, LLC v. HTC Corp.*, No. 2:14-cv-690, Dkt. 160, at 10 (E.D. Tex. Aug. 5, 2015); *see also Cellular Communications Equip. LLC v. HTC Corp.*, No. 6:13-cv-507-JRG, 2015 WL 11118110, at *13 (E.D. Tex. Mar. 27, 2015) (denying transfer when co-pending cases would remain regardless of outcome of instant motion to transfer); *Innovative Automation, LLC v. Audio Video & Video Labs, Inc.*, No. 6:11-cv-234-LED-JDL, 2012 WL 10816848, at *8 (E.D. Tex. May 30, 2012) (same). There are nine cases co-pending before this Court involving

---

[6] In this case, HPE has also failed to show that the convenience of the parties and witnesses favors transfer. *See infra.*

7

the same four patents-in-suit. No other defendant has moved to transfer. Granting HPE's motion would thus result in separate courts deciding issues common to all the related cases. Because the Court has not yet construed the patents-in-suit, this could cause multiple, inconsistent claim constructions and other undesirable inefficiencies. In these circumstances, courts weigh the judicial economy factor heavily against transfer. *See, e.g.*, *Harcol Res., LLC v. USPlabs, LLC*, No. 2:13-cv-230, Dkt. 33, at 6 (E.D. Tex. Mar. 28, 2014) (finding that judicial economy "weighs strongly against transfer" when co-pending related cases "which have no motion to transfer" would yield parallel proceedings in two courts).

Besides the contemporaneous efficiencies to be gained by retaining this case in this District, this Court has judicial knowledge and experience with the asserted patents based on its adjudication of prior related cases. This, too, weighs strongly against transfer. *See Personal Audio, LLC v. Google, Inc.*, No. 1:15-cv-350, Dkt. 66, Slip Op. at 14 (E.D. Tex. Apr. 20, 2017) ("In considering judicial economy, a judge's familiarity with the patents-in-suit weighs heavily in favor of maintaining the action in that court."). Having presided over ten prior litigations involving at least three of the patents-in-suit, this Court has familiarized itself with many of the key issues that will arise. The Court has resolved dispositive motions and discovery disputes, and has studied the underlying technology, including by engaging a technical expert to assist with claim construction proceedings. *See supra* p. 2. In similar circumstances, this Court has found that considerations of judicial economy weighed against transfer. *See, e.g.*, *Personal Audio, LLC*, Slip Op. at 15 (denying transfer where court had adjudicated several previous cases involving the asserted patents, based in part on court's past appointment of a technical advisor who helped the court understand the technical background and expert opinions); *Zenith Elecs. LLC v. Sony Corp.*, No. 5:10-cv-184-DF, Dkt. 36, Slip Op. at 16-17 (E.D. Tex. Apr. 25, 2011) (weighing against transfer fact that court had presided over two previous cases involving the same patents and had entered a claim construction order in one case); *Wi-LAN Inc. v. Sierra Wireless Am., Inc.*, No. 6:12-cv-921, Dkt. 44, Slip Op. at 8 (E.D. Tex. Sept. 25, 2013) (similar); *Bandspeed, Inc. v. Acer, Inc.*, No. 2:10-cv-215-TJW (E.D. Tex. Aug. 11, 2011) (transferring case

8

because transferee forum had already conducted technology tutorial and *Markman* hearing in related case); *Patent Harbor, LLC v. Twentieth Century Fox Home Ent't, LLC*, No. 6:10-cv-607-LED-JDL, Dkt. 539 (E.D. Tex. May 25, 2012) ("[T]he Federal Circuit has consistently found that 'the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice.'" (quoting *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009))).

Tellingly, HPE ignores judicial economy. Although it attempts to leverage the co-pending litigations by arguing that some of the third-party defendants allegedly have a presence in California, *see* Mot. at 4-5, HPE fails to mention that none have requested transfer.

2. ***The Relative Ease of Access to Sources of Proof Weighs Against Transfer.***

This factor focuses on ***access*** to evidence—not just where evidence happens to be geographically located. *See Moss v. Lockheed Martin Corp.*, No. 3:10-cv-1659, 2011 WL 197624, at *4 (N.D. Tex. Jan. 18, 2011). HPE argues that "sources of proof in Northern California include HPE, its relevant subsidiary, Aruba, and its third-party chipset suppliers, Qualcomm and Broadcom." Mot. at 8. But this argument misses the mark for several reasons.

As an initial matter, this Court discounts the importance of evidence from third-party suppliers in the transfer analysis. *See Salazar v. HTC Corp.*, No. 2:16-cv-1096, Dkt. 104, at 9-10 (E.D. Tex. Oct. 19, 2017) ("Moreover, Qualcomm's name has been invoked a number of times in this Court as a third party in support of venue-change motions, yet the Court cannot recall a single instance where a Qualcomm witness has testified or where Qualcomm has produced a significant amount of relevant evidence in the capacity of a third-party."). Consistent with this Court's observation in *Salazar*, HPE provides no evidence that either Qualcomm or Broadcom possess relevant information, let alone that it will be produced in this case or used at trial.[7] *See*

---

[7] HPE's assertion, in the body of its brief, that Qualcomm and Broadcom "appear to be based in San Jose, California," Mot. at 3, is misleading. As HPE admits (buried in a footnote) Qualcomm is headquartered in San Diego, which is in the Southern District of California. Ex. BB [United States – Qualcomm].

9

Ex. L [LaRoche Depo.] at 52:3-11. And, in any case, both Qualcomm and Broadcom have Texas offices—including in this District—so any documents can presumably be accessed just as easily from Texas as from their corporate headquarters. Exs. CC [Qualcomm Office Locations] at 1, 4 (listing offices in Austin and Richardson); DD [Broadcom Office Locations] at 5 (listing offices in Austin and Plano).

Next, regarding its own documents, HPE notably ***does not assert*** that relevant documents are inaccessible or not located in this District. Its brief carefully states that "there are no known relevant documents or employees related to the Accused Products located in Texas." Mot. at 8. But even if this highly qualified assertion could establish an absence of documents in Texas (it could not), the statement is absent from the Lunetta Declaration—so it is pure attorney argument. . *See supra* p. 5; Ex. L [LaRoche Depo.] at 18:3-19.

HPE concedes that it has Inside Sales team members in Plano. *See* Mot. at 3. But HPE omits that its Texas offices—including in Plano—also house technical personnel, and ignores its many Texas teleworkers with technical knowledge. *See supra* Part II.B.1.

Finally, HPE attempts to brush off American Patents' strong ties to this District. American Patents was formed by Jon Rowan as a Texas company, and Mr. Rowan manages the company from his office in Tyler. *See* Ex. AA [Rowan Decl.] at ¶¶ 2-3. American Patents' files and documents, including patent ownership, prosecution, and assignment documents, as well as invention disclosures and ribbon copies of patents, were transferred to Tyler in connection with the purchase of the asserted patents. *Id.* ¶ 4. These documents fill six bankers' boxes and are maintained at American Patents' office in this District, along with original settlement and licensing agreements. *Id.* This physical evidence is neither located in, nor accessible from, the Northern District of California.

HPE selectively quotes from *Automotive Body Parts Association v. Ford Global Technologies, LLC*, No. 4:13-cv-705, 2015 WL 123852, at *5 (E.D. Tex. Jan. 7, 2015), for the Court's finding that "the bulk of the relevant evidence regarding the creation of the design" of

10

the accused products was in Michigan, supporting transfer. But this case does not help HPE here now that discovery has revealed the accused "legacy" products were developed in Canada and China, not Silicon Valley. And HPE omits the immediately succeeding sentence, in which the Court made clear that the evidence it was referring to was "***non-electronic evidence of models and physical products***[.]" *Id.* at *5 (emphasis added). Here, HPE has identified no physical, non-electronic evidence like the clay prototype models in *Automotive Body Parts*. To the contrary, its technical documents are stored electronically and are accessible in this District. Further, the case differs on other grounds, including that neither party there had a connection to this District, *see id.* at *4, whereas HPE has a strong presence—and American Patents is based— here. On the other hand, American Patents' evidence ***does*** consist of physical papers, and it is located in and accessible only from this District—so if anything, *Automotive Body Parts* affirmatively supports ***denying*** transfer.

On balance, HPE has not shown that there will be any problem accessing relevant evidence from HPE or third parties (to the extent any exists) in this District. And any physical evidence from American Patents is accessible in this District and not in California. Thus, the relative ease of access to sources of proof weighs against transfer or is, at most, neutral.

    3.    ***The Cost of Attendance for Willing Witnesses Is Neutral.***

This case does not exist in a vacuum: there are nine other related cases pending in this District. When transfer would result in multiple courts litigating the same patents, "it is likely that many willing witnesses (i.e., all of Plaintiff's witnesses and maybe also Defendants' experts) would be expected to appear in at least two [] districts." *Automation Middleware Solutions, Inc. v. Emerson Process Mgmt. LLLP*, No. 2:15-cv-1266, Dkt. 53, at 11 (E.D. Tex. Feb. 1, 2017) ("*AMS*"). In *AMS*, this Court found the witness convenience factor neutral, in part because any cost savings resulting from transfer would be offset by the additional inconvenience many witnesses would face in having to appear in more than one judicial district. *See id.*

American Patents' co-owner, Mr. Rowan, is a resident of Tyler, Texas, and he is likely to be a trial witness. *See* Ex. AA [Rowan Decl.] at ¶¶ 7, 10. He would be inconvenienced by

11

traveling to the Northern District of California. *Id.* ¶ 10. And if this case is transferred, all of American Patents' witnesses—including at least Mr. Rowan and American Patents' expert witnesses—would be inconvenienced by having to attend trials in two states. *Id.* ¶ 11. This burden outweighs any inconvenience HPE's witnesses might save through transfer, and distinguishes this case from *WiAV Networks, LLC v. 3Com Corp.*, No. 5:09-cv-101 (DF), 2010 WL 11484491, at *5 (E.D. Tex. Jul. 15, 2010), in which the plaintiff had no connection to Texas and "not a single witness reside[d] in the Eastern District of Texas." *See* Mot. at 12.

HPE identifies six potential witnesses as based in Northern California who allegedly have relevant knowledge. *See* Mot. at 8; Lunetta Decl. at ¶ 6. But HPE's list focuses only on persons allegedly with knowledge of a subset of accused products; HPE identifies no witnesses with knowledge of the large number of accused "legacy" products that are relevant to this suit. In fact, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Both Waltham, Massachusetts and Montreal, Quebec are nearly 1000 miles closer to Sherman, Texas, than to San Jose, California.[8] *See Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, No. 2:17-cv-577-JRG, 2018 WL 4175934, at *5 (E.D. Tex. June 29, 2018) (not discounting inconvenience of witnesses in Canada, and noting that convenience of nonparty witnesses receives more weight than party witnesses). This factor is neutral.

    4.    ***The Availability of Compulsory Process Is Neutral.***

This factor may support transfer when more third-party witnesses reside within the transferee venue and when the transferee venue is said to have "absolute subpoena power" over third-party witnesses. *Volkswagen II*, 545 F.3d at 316. Because HPE has identified no third-party witness who will testify at trial, this factor is neutral.

---

[8] *See* https://www.mapdevelopers.com/distance_from_to.php. Distance from Montreal to Sherman: 1598 miles. Distance from Montreal to San Jose: 2524 miles. Distance from Waltham to Sherman: 1682 miles. Distance from Waltham to San Jose: 2669 miles.

12

Instead, HPE relies on several layers of speculation in implying that (1) witnesses from Qualcomm or Broadcom may testify, (2) that any such witness would be an unwilling witness and require subpoena, and (3) that any such hypothetical, unidentified witness would be based only at company headquarters in San Jose.[9] But it is just as likely, if not more so, that (1) because technical trial testimony will likely be handled by experts, there will not be testimony from third-party witnesses; (2) even if testimony were needed from these third parties, the Court would likely not need to use its subpoena power given HPE's business relationship with Qualcomm and Broadcom; and (3) knowledgeable witnesses from these third parties will just as likely be found in one of Qualcomm and Broadcom's multiple Texas locations. And even if information from third-party witnesses were needed and the witnesses unwilling to travel, it could easily be obtained via subpoena for deposition testimony, which could then be used at trial. *See* Fed. R. Civ. P. 45(c); *see also Salazar*, Slip Op. at 9-10. This factor is neutral.

### B. The Public Interest Factors Weigh Against Transfer.

#### 1. *Time to Trial Weighs Against Transfer.*

"This Court has consistently found that median time to trial in this District is several months faster than the Northern District of California." *AGIS Software Dev. LLC v. HTC Corp.*, No. 2:17-cv-514, 2018 WL 4680557, at *9 (E.D. Tex. Sept. 28, 2018) (citations omitted). Recent statistics show that the median time to trial is 16.8 months in this District, compared to 22.8 months in the Northern District of California, a difference of half a year. *See* Ex. EE [Time to Trial]. This factor weighs against transfer under these circumstances. *See ContentGuard Holdings, Inc. v. Google, Inc.*, No. 2:14-cv-61, Dkt. 38, at 11 (E.D. Tex. Apr. 16, 2014) (finding a six-month difference in median time-to-trial "not negligible"). HPE ignores this factor, claiming it is "neutral" with no supporting evidence and argument. It is not neutral; this factor weighs against transfer.

---

[9] This is a particularly puzzling argument given that Qualcomm's headquarters are not in San Jose, but at the opposite end of the state, in the Southern District of California.

### 2. *Local Interest Weighs Against Transfer.*

The local interest in having localized interests decided at home also weighs against transfer, because American Patents and its owners reside here. This Court routinely finds a local interest in this District when the plaintiff is a longstanding resident, because "Texas residents have a strong interest in deciding a patent infringement dispute involving a patent owned by a Texas company." *iFly Holdings LLC v. Indoor Skydiving Germany GMBH*, No. 2:14-cv-1080-JRG-RSP, 2015 WL 5909729, at *5 (E.D. Tex. Oct. 7, 2015); *Cooktek Induction Sys., LLC v. I/O Controls Corp.*, No. 4:15-cv-548-ALM, 2016 WL 4095547, at *3 (E.D. Tex. Aug. 2, 2016) ("Because Plaintiff is located in Texas, and the owner of the patent at issue, this case does have a significant connection to this district."). And the date that a Texas company was formed is irrelevant if the owners are genuine residents of this District, as they are here. *See Texas Data Co. v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 646 (E.D. Tex. 2011).

This District has a local interest in this case. American Patents is a Texas company, and American Patents' founder and managing member, Jon Rowan, resides in Tyler. Ex. AA [Rowan Decl.] at ¶¶ 2, 7. Mr. Rowan was born and raised in Tyler, and has lived here since graduating from law school. *Id.* ¶¶ 5-7. Mr. Rowan practices as a transactional attorney, pays taxes, votes, and attends church here, and he is actively involved in the local community. *Id.*

Sam Greenberg is the only other investor in American Patents. *Id.* ¶ 8. Like Mr. Rowan, Mr. Greenberg is a life-long resident of this District. *Id.* Mr. Greenberg was born and raised here, has lived here for many years, and runs his family's 70-year old business, Greenberg Smoked Turkeys, in this District. *Id.*

This Court consistently weighs the local presence of similarly situated plaintiffs against transfer. *See, e.g.*, *Texas Data Co., L.L.C. v. Target Brands, Inc.*, 2011 U.S. Dist. LEXIS 2917, at **41-45 (E.D. Tex. Jan. 12, 2011). In denying transfer, the *Texas Digital* court distinguished cases "where a plaintiff from out of the state or country . . . created a company or office in [this District] to manipulate venue," and had no employees or principals in the District. *Id.*; *see also NovelPoint Learning LLC v. LeapFrog Enters.*, No. 6:10-cv-229 JDL, 2010 U.S. Dist. LEXIS

14

128906, *10-14 (E.D. Tex. Dec. 6, 2010) (plaintiff's presence was not "recent or ephemeral" where two of three principals lived in Texas and company was formed four months before it sued); *Personal Audio, LLC v. Apple, Inc.*, No. 9:09-cv-111, 2010 WL 582540, at *3-4 (E.D. Tex., Feb. 11, 2010) (plaintiff's presence in district given weight where its sole office, and its relevant documents, were in the district); *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-cv-446, 2010 U.S. Dist. LEXIS 104125, *20-23 (E.D. Tex. Sep. 28, 2010) (plaintiff's presence in district was "recent," but "not ephemeral," where its officer, its only corporate office, and its documents were located in the district). The cases on which HPE relies also differ on these grounds. *See Affinity Labs of Texas v. Samsung Elecs. Co.*, 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013) (neither plaintiff nor defendants incorporated in this District); *Auto Body Parts*, 2015 WL 123852, at *4 (same); *WiAV*, 2010 WL 11484491, at **3-4 (same).

But American Patents is not the only party with strong Texas affiliations: HPE also has a massive Texas presence. HPE says that it employs 4,000 employees in its Northern California offices, but it omits that it employs at least that many (and possibly thousands more) in Texas. HPE is deeply integrated within this State and this District. *See supra*. And while Qualcomm and Broadcom are not parties to this suit—rendering irrelevant any alleged local interest attached to them—these third parties also have significant ties to Texas and this District.

HPE argues that it is headquartered in Silicon Valley and that "the silicon integrated circuits industry is central to, and gave rise to the name for, Northern California's Silicon Valley." Mot. at 14. But the defendant here is HPE—not Silicon Valley or the "silicon integrated circuits industry." And discovery has revealed that many of HPE's accused products were actually developed in Canada and China—not in Silicon Valley. Because this District has a greater local interest than the Northern District of California, this factor weighs against transfer.

3. ***The Remaining Public Interest Factors Are Neutral.***

American Patents agrees that the final two public interest factors are neutral.

IV. **CONCLUSION**

For the foregoing reasons, the Court should deny HPE's motion to transfer venue.

15

Dated: March 24, 2020

Respectfully submitted,

<u>/s/ *Larry D. Thompson, Jr.*</u>
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Christopher Ryan Pinckney
Texas Bar No. 24067819
ryan@ahtlawfirm.com

ANTONELLI, HARRINGTON
& THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

Stafford Davis
State Bar No. 24054605
sdavis@stafforddavisfirm.com
Catherine Bartles
Texas Bar No. 24104849
cbartles@stafforddavisfirm.com
THE STAFFORD DAVIS FIRM
815 S Broadway Ave, Tyler, TX 75701
Tyler, Texas 75702
(903) 593-7000
(903) 705-7369 fax

*Attorneys for American Patents LLC*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 24th day of March, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record, and have emailed the sealed filing to all counsel of record in this case.

                                        */s/ Larry D. Thompson, Jr.*
                                        Larry D. Thompson, Jr.

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

      I hereby certify that I am authorized to file the foregoing under seal under the Local Rules because I have moved for leave to file the foregoing under seal, and at least because the foregoing contains information designated by HPE as Confidential—Outside Attorney's Eyes Only under Patent Rule 2-2.

                                        */s/ Larry D. Thompson, Jr.*
                                        Larry D. Thompson, Jr.